ERWIN et al., Appellants, v. HOLDERMAN et al.

Land : CONVEYANCE NOT IN FRAUD OF CREDITORS. Where a son received a deed of land from his parents for the purpose of executing a deed of trust thereon, and upon his own land, to pay off certain incumbrances thereon, created to liquidate debts of the father, and agreed to reconvey the land to his mother upon the deed of trust being released as to his own land, he only held the land conveyed to him as a security, and upon his own land being released from the trust deed, a reconveyance to his mother of the land conveyed to him was not in fraud of creditors.

*Appeal from Bates Circuit Court.*—HON. J. B. GANTT, Judge.

AFFIRMED.

*Parkinson & Abernathy* for appellants.

(1) The deed from Barton Holderman to J. A. is a voluntary conveyance of the fee-simple absolute, without condition or words of trust, or holding to the use of grantor or others. And the testimony elicited by the

cross-examination of the plaintiffs' witnesses, and in chief on the defence, seeks, in the interest of defendant, Jane Holderman, to attach a trust character to that conveyance, by oral proof alone, without writing or memorandum of any kind, and contravenes the policy, as well as the express terms, of the statute of frauds. Its purpose is to create an express trust in J. A. for the benefit of his mother. R. S., sec. 2511 ; Perry on Trusts, sec. 83 ; *Woodford v. Stephens*, 51 Mo. 443. (2) The voluntary deed from J. A. Holderman to his mother is not, by itself, or in connection with the deed from his father, a manifestation or proving of any trust regarding this land, either executed or executory. To hold that these two deeds evidence a completed trust, or an executed power by J. A., is to give the deeds a meaning their language does not justify, and to make for the parties, by parol, an agreement that contradicts and varies the written evidence they, themselves, provided to manifest their contracts. A subsequent parol agreement to vest the title in Mrs. Holderman will not, as to creditors existing absolutely or contingently, at the date of his deed to his mother, in equity, be permitted to accomplish that which the statute declares shall be done only by written memorandum. 1 Greenl. Evid., sec. 277 ; 1 Story Eq., sec. 374 ; *Reade v. Livingston*, 3 Johns. Ch. 381 ; *Ames v. Scudder*, 83 Mo. 189 ; *Koehring v. Martin*, 61 Mo. 403. (3) The defendant, seeking to establish a trust and to estop J. G. Erwin, because of his alleged advice, is inadmissible under the pleadings. It is not contradictory to the averments of the bill, and is not responsive to the answer. There must be appropriate pleading to admit evidence of a distinct equity, " to rebut an equity," or to establish an estoppel of the character sought to be proved. There is nothing in the bill from which a trust or power is inferable, or an estoppel can be deduced, and the answer is a denial of the charges in the bill, nothing more ; and the oral testimony of defendants is

all collateral to the issues tendered by the pleadings. Greenl. on Evid., sec. 51 ; *Eddy v. Baldwin*, 32 Mo. 369 ; *Bray v. Marshall*, 75 Mo. 327.   (4) The plaintiff, W. H. Erwin, is, as tenant in common, entitled to an undivided one-half, notwithstanding the finding of the court as to J. G.   There was no knowledge or notice as to W. H. Erwin, by a scintilla of evidence or inference. Wade on Notice, sec. 684 ; *Snyder v. Sponable*, 1 Hill, 567 ; s. c., 7 Hill, 427.

*Boggess & Moore* for respondents.

(1)  The agreement of J. A. Holderman when he took the title deed to the land to réconvey to Jane Holderman, although resting in mere words, was enforceable.   Jones on Mortgages, secs. 241–281.   (2) The land was a trust fund in his hands and one with which his creditors had no concern.   *Payne v. Twyman*, 68 Mo. 339 ; *Mills v. Sampsell*, 53 Mo. 356 ; *State Savings Bank v. Kellogg*, 63 Mo. 540.

BRACE, J.—This action was brought to set aside a deed to certain real estate, situate in Bates county, executed by J. A. Holderman and wife to Jane Holderman, one of the defendants, dated the eighth day of March, 1882, on the ground that said deed was executed without consideration, and with the intent, on the part of the said J. A. Holderman, to hinder, delay, and defraud plaintiffs and other creditors of the said J. A. Holderman, of the collection of their just debts, in which intent the said Jane participated.   The evidence in the case, as preserved in the bill of exceptions, tends to prove the following state of facts :

The defendants, Barton and Jane Holderman, are husband and wife.   Barton Holderman bought the tract of land in question, containing about four hundred acres, in 1853, and has lived upon it ever since, except during the war.   Prior to the thirteenth of July, 1881, the said

Barton had become involved in debt, and, at that date, some of these debts had been reduced to judgments, and were liens upon said land; execution had been issued upon the principal one, and the land of the said Barton was about to be sold. In order to save the land, his son, the said J. A., undertook to negotiate a loan with one Everingham, to the amount of $2,750. Everingham, however, in view of the amount of liens on the land, was not willing to make the loan upon it. J. A. owned a tract of one hundred and sixty acres, in the same neighborhood, and Everingham proposed that if he, J. A., would put in his land, also, as security for the loan, he would make it, and when the liens should be released from his father's land, he would release J. A.'s land from the debt.

In pursuance of this arrangement, the said Barton and his wife, by their deed, dated the thirteenth day of July, 1881, conveyed the four hundred-acre tract to the said J. A. Holderman, with the understanding that when the liens should be released from the land, and Everingham should release his, J. A.'s, land, from the security for the loan, he would reconvey said land to his mother, the said defendant, Jane Holderman, wife of the said Barton. This deed was acknowledged and recorded on the fourteenth day of July, 1881, and, on the same day, the said J. A. and his wife executed a deed of trust on his father's four hundred-acre tract, thus conveyed to him, and his own one hundred and sixty-acre tract, to the said Everingham, to secure the loan of $2,750, which they thereupon received from him. A settlement was effected with the creditors of Barton Holderman, with the money thus obtained, his land released from the liens upon it; and, thereupon, the said Everingham released J. A.'s land from the deed of trust, and he afterwards sold it. He neglected, however, to reconvey said four hundred-acre tract to the said Jane, until the eighth day of March, 1882, and, in the meantime, and before

doing so, incurred a liability to the plaintiffs, who, at his request, had become his sureties on a note of two thousand dollars, on which they were compelled to pay the sum of $1,032, to recover which they brought suit in the circuit court of Bates county, by attachment levied upon the said four hundred-acre tract, on the thirtieth day of May, 1882, in which the attachment was sustained, and, on the twenty-ninth of November, 1882, plaintiffs recovered judgment for said sum, and thereafter, on the twenty-first day of March, 1883, caused said real estate to be sold on execution on said judgment, and became the purchasers thereof, and received a sheriff's deed therefor.

On the trial, the court, after hearing the evidence in the cause, dismissed the bill, and we do not see how it could have done otherwise, in the light of the foregoing facts. The deed made by Barton Holderman and his wife to J. A. Holderman, and the deed of trust executed by J. A. Holderman and his wife to Hartwell, trustee, to secure the payment of the note given to Everingham for the $2,750, borrowed from him to pay off Barton Holderman's debts, were each but parts of one transaction, having for its sole object to secure the loan from Everingham. In order to accomplish this purpose, it became necessary that J. A. Holderman's land should be put into the trust deed, and this was the reason the transaction assumed the form it did. On the face of the papers executed, the equity of redemption in the land of his father, as well as in his own land, was in J. A. Holderman, but the deed of the father to his son, although absolute on its face, was, in fact, from the very nature of the transaction, a mortgage of indemnity, only, to J. A. Holderman. He could redeem his own land from the deed of trust, for the benefit of himself and his creditors ; but he could not so redeem his father's land. The only benefit he could derive by redeeming the legal title

to that land would be to hold it as security, indemnify himself against the contingent liability to loss, which he incurred by reason of having put his own land into the deed of trust, and executed his own note for the money borrowed, to secure which the deed of trust was given; but he could not redeem the land from the deed of trust without, at the same time, relieving himself from the contingent liability to loss which he incurred by executing the deed of trust, and the title, thus redeemed, would be subject only to a charge, in his favor, for the amount paid for the redemption.

On the other hand, the payment of the debt secured by the deed of trust would discharge, alike, the lien upon the land of Barton and J. A., and the note given by J. A. for the money borrowed, and leave the naked legal title of Barton's land in J. A., discharged of every claim he had upon it, and such title would remain in him, for the sole purpose of being reconveyed to his father, and, until such reconveyance was made, would be held by him, by implication of law, in trust for his father—a trust not within the statute of frauds, and enforceable in a court of equity—so that the said J. A. never had a beneficial or disposable interest in said real estate, or any interest therein, subject to the claims of his creditors. The deed made by him, in execution of the trust, to his mother, prior to the levy of the attachment, in pursuance of the original agreement with his father, was made for a valuable consideration, and could not have been to defraud, hinder, or delay plaintiffs, or any other creditors of the said J. A. Holderman of the collection of their debts.

The judgment of the circuit court is, therefore affirmed. All concur.